[Sac. No. 3626.  In Bank.—February 16, 1926.]

In the Matter of the Estate of THOMAS FRANCIS BURKE, Deceased. MILLER & LUX, INCORPORATED (a Creditor), Appellant.

[1] FINDINGS—EVIDENCE—APPEAL.—The appellate court is bound by the finding of the trial court on a question of fact, if the finding is supported by any substantial evidence.

[2] EXECUTORS AND ADMINISTRATORS—CARRYING ON BUSINESS—ASSUMPTION OF RISK.—If an administrator or executor, without being authorized to do so, elects or undertakes to carry on the business in which the deceased was engaged, he does so at his peril; and this rule is also applicable in cases wherein an administrator or executor undertakes to make new contracts or to engage in some new enterprise.

[3] ID.—OBLIGATION TO CONTINUE BUSINESS—CONTRACTS—LIABILITY FOR LOSSES.—Except in rare and special instances, the administrator or executor is under no obligation or duty to continue the business of the deceased; nor is he permitted to enter into contracts or speculate by embarking in business enterprises on behalf of the estate and, if he ventures to do so, he will be held to strict accountability for any losses thus suffered.

[4] ID.—DUTY OR POWER TO ACT—GOOD FAITH—ABSENCE OF LIABILITY FOR LOSSES.—Such rule is not applicable in its strict sense to cases in which the administrator or executor is charged with a duty, or vested with power to act, and the wisdom of the course to be pursued is in doubt, and who, in the performance or exercise of his duty or power, acts to the detriment of the estate, provided he acted in good faith and as a cautious and prudent man would likely act under similar circumstances, but in such a case the administrator or executor will not be surcharged although the consequences may be bad.

[5] ID. — CONTRACTS OF DECEASED — PERSONAL SERVICES — DUTY OF REPRESENTATIVE.—It is the duty of an administrator to perform the contracts of his intestate unless the acts to be performed are personal, such as an author to compose a particular work, an artist to paint a particular painting, or a lawyer or a physician to render services; and the rule that contracts to perform such per-

---

1.  See 2 Cal. Jur. 913; 2 R. C. L. 193.

2.  See 11 Cal. Jur. 1027; 11 R. C. L. 136.

4.  Power of personal representative to carry on business on behalf of estate, note, 40 L. R. A. (N. S.) 204.

5.  See 11 Cal. Jur. 969; 11 R. C. L. 163.

sonal acts are discharged by death or by the disability of the person who was to perform said acts does not apply where the services are of such a character that they may be as well performed by others or where the contract by its terms shows that performance by others was contemplated.

[6] ID.—BUILDING CONTRACTS—PERSONAL PERFORMANCE.—Ordinarily a building contract is not to be brought within that class of contracts which are deemed to have been entered into because of the personal skill or taste of the persons who are to perform them, although it is otherwise where it is made to appear that the work is of a character and kind as to require personal performance by the contractor.

[7] ID.—FAILURE TO CONSULT COURT IN ADVANCE—REIMBURSEMENT FOR LOSSES—JUDGMENT OF PROBATE COURT.—In all cases where there is room for doubt as to the duty of the administrator or as to the policy that should be pursued in the matter of completing contracts made by the deceased, the judgment of the probate court should be consulted before any steps are taken that might seriously affect the funds of the estate; but the failure of the administrator to submit the question of the completion of building contracts made by the deceased to the judgment of the probate court before acting in the matter is not sufficient reason for the disallowance of an expenditure of the estate's funds to make good a loss sustained, where it appears to the satisfaction of the probate court, on the issue being raised on the hearing of the account of the administrator, that the latter acted reasonably in the premises, and that court approves his action.

---

(1) 4 C. J., p. 878, n. 82.   (2) 24 C. J., p. 56, n. 50, p. 63, n. 7. (3) 24 C. J., p. 55, n. 48 New.   (4) 24 C. J., p. 123, n. 66.   (5) 24 C. J., p. 1050, n. 5 New.   (6) 13 C. J., p. 644, n. 3, p. 645, n. 5, 6, p. 646, n. 7; 24 C. J., p. 53, n. 30, p. 54, n. 31.   (7) 13 C. J., p. 645, n. 5; 23 C. J., p. 1174, n. 47 New; 24 C. J., p. 53, n. 30, p. 54, n. 32, 33, 34, p. 55, n. 46, p. 91, n. 38.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. P. Wittschen, Gail C. Larkin, Joseph C. Sharp, J. E. Woolley and Vincent J. McGovern for Appellant.

---

7. Liability for debts incurred by executor or administrator in completing performance of contract made by the decedent, note, 1 A. L. R. 1608.

Stephen P. Galvin and N. K. Landram for Respondent.

SEAWELL, J.—This appeal is from an order made and entered by the probate court settling and allowing the first account and report of the administrator in the above-entitled proceedings, against the objections of appellant, a creditor, whose claim had been approved and allowed for the sum of $3,376.62 by the judge of said court.

Said account included the allowance of a credit in favor of the administrator covering a loss sustained as the result of the administrator carrying out to completion two building and construction contracts, one of which was entered into by the intestate with the Odd Fellows' Association of Los Banos, and the other was made with the city of Los Banos.

The intestate, a contractor and builder, had commenced to perform both of said contracts, and while so engaged died, and his administrator completed the performance of the covenants of the said intestate's contracts at a loss. While the work commenced by the intestate had not greatly advanced at the time of his death, it had, nevertheless, progressed to a somewhat substantial stage. The foundations were laid and the preliminary work had been completed in both instances and considerable material, steel and timbers, had been cut and placed in preparation for the erection of the superstructure. Contracts for material had been entered into by the intestate. No complaint is made that the administrator, in completing the contracts of his intestate, was guilty of fraud or mismanagement, or that the cost of completing said work of construction was greater than it should have been. Objection is made, however, to his undertaking the completion of said unfinished construction in the circumstances of the situation. There would have remained sufficient assets in the hands of the administrator to have discharged said creditor's claim had not the loss been sustained in the manner above related. No objection appears to have been made by the creditor to the completion of said work at any time during its progress.

The probate court, in its order settling said account, made the following finding:

"The court finds that the administrator carried out and completed two building and construction contracts entered

into by deceased in his lifetime, but uncompleted at the time of his death; that said contracts did not require the personal skill of the deceased in their carrying out and completion; that in the carrying out and completion of the same a loss of $6,894.17 was suffered and sustained; that said loss is a charge against the estate, and chargeable against the estate, as part of the cost of administration and should be allowed.''

[1] This court is bound by the finding of the trial court on a question of fact, if the finding is supported by any substantial evidence. Appellant has not pointed out wherein the above finding is not sufficiently supported, but we have, nevertheless, examined the record and find there is sufficient evidence to support it.

[2] The law is well settled in this state by numerous authorities that if an administrator or executor, without being authorized to do so, elects or undertakes to carry on the business in which the deceased was engaged, he does so at his peril. (*Estate of Knight,* 12 Cal. 200 [73 Am. Dec. 531]; *Estate of Moore,* 72 Cal. 335 [13 Pac. 880]; *In re Rose,* 80 Cal. 166 [22 Pac. 86]; *Estate of Broome,* 162 Cal. 258 [122 Pac. 470]; *Estate of De Rome,* 175 Cal. 399 [165 Pac. 919].) The rule announced in the above-cited cases is also applicable in cases wherein an administrator or executor undertakes to make new contracts or to engage in some new enterprise. [3] In all such cases it is held that the administrator or executor, except in rare and special instances, is under no obligation or duty to continue the business of the deceased. Nor is he permitted to enter into contracts or speculate by embarking in business enterprises on behalf of the estate and, if he ventures to do so, he will be held to strict accountability for any losses thus suffered. [4] The reasoning of those cases is not applicable in its strict sense to cases in which the administrator is charged with a duty, or vested with power to act, and the wisdom of the course to be pursued is in doubt, and who, in the performance or exercise of his duty or power, acts to the detriment of the estate, provided he acted in good faith and as a cautious and prudent man would likely act under similar circumstances. In such a case he will not be surcharged although the consequences may be bad.

In the instant case, the decedent had entered into a contract binding himself and his personal representative to perform the covenants which were subsequently performed by the administrator. There is no evidence before us to sustain the conclusion, and we are not permitted to assume as a fact proved that the intestate would have performed his contract more profitably to himself than it was performed for his estate by his administrator. The solvency or insolvency of himself or his estate depended upon the wisdom or lack of wisdom evidenced by the execution of his contract as tested by the final result. We cannot say, therefore, that, had he lived, he would have been better able to pay his obligation to appellant than was his administrator. The foregoing obligations were created by his own hand and act and were not new obligations incurred by the contracts of his administrator. The parties with whom the contracts were made were entitled to have them respected, and there is no evidence or suggestion that performance was waived by them. Whether it would have been to the interest of the estate, and the creditor as well, for the administrator to have refused to perform, on the theory that any damages recovered against the estate for a breach would have been smaller than the loss suffered by performance, was at best a question addressed to the judgment of the probate judge.

[5] The general rule is that it is the duty of an administrator to perform the contracts of his intestate unless the acts to be performed are personal, such as an author to compose a particular work, an artist to paint a particular painting, a sculptor to produce a particular piece of statuary or other work of art, or a lawyer or physician to render services. Contracts to perform such personal acts are discharged by death or by the disability of the person who was to perform said acts. This rule, however, does not apply where the services are of such a character that they may be as well performed by others (*Janin* v. *Browne,* 59 Cal. 37; *McCann* v. *Pennie,* 100 Cal. 547 [35 Pac. 158]; *Husheon* v. *Kelley,* 162 Cal. 656 [124 Pac. 231]), nor where the contract by its terms shows that performance by others was contemplated. (6 Cal. Jur. 448.) [6] Ordinarily, a building contract is not to be brought within that class of contracts which are deemed to have been entered into because of

the personal skill or taste of the persons who are to perform them. (*Janin* v. *Brown, supra; McCann* v. *Pennie, supra; In re Hincheon,* 159 Cal. 755 [36 L. R. A. (N. S.) 303, 116 Pac. 47]; *McDonald* v. *O'Shea,* 58 Wash. 169 [Ann. Cas. 1912A, 417, 108 Pac. 436]; *Bambrick* v. *Webster Groves Presbyterian Church,* 53 Mo. App. 225.) It is otherwise, of course, where it is made to appear, as remarked by Lord Denman, that the "character, credit and substance of the party" contracted with was an inducement to the contract. A building contract may, from the character and kind of work to be performed, properly fall within the rule of "personal performance acts." But this is not such a contract.

The rule as stated by 24 Corpus Juris, 53, 54, and which is approved by the weight of judicial authority, and text-writers, is that "executors or administrators are generally bound by all the covenants or contractual obligations of their decedents, except such as are personal in their nature and of which personal performance by the decedent is of the essence, or such as are terminated by decedent's death, even though performance is detrimental to the estate; and where the personal representative neglects or refuses to carry out the contract of his decedent, the other party has the usual remedies, as in electing to treat it as rescinded and claiming damages." The rule has been thus stated by this court: " 'Where the contract of the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract.' (Parsons on Contracts, sec. 131.) *E converso,* the personal representative is bound to complete such a contract, and, if he does not, may be made to pay damages out of the assets. (*Siboni* v. *Kirkman,* 1 Mees. & W. 418.)" (*Janin* v. *Brown, supra;* see, also, *McCann* v. *Pennie, supra; Quick* v. *Ludbarrow,* 3 Bulstrade Rep. 30; *Hawkins* v. *Ball's Adm.,* 18 B. Mon. (Ky.) 816; *Halyburton* v. *Kershaw as Adm.,* etc., 3 Desau. (S. C.) 105; *Billing's Appeal,* 106 Pa. 558; 2 Woerner's American Law of Administrators, 3d ed., p. 1041, sec. 328; 2 Williams on Executors and Administrators, 10th ed., p. 1348.)

Appellant chiefly relies upon *Exchange National Bank* v. *Estate of Betts,* 103 Kan. 807 [3 A. L. R. 1604, 176 Pac. 660], as a case directly in point. We have examined that case and others cited by appellant but we cannot accept the

doctrine as therein announced as a precedent which should control our decision in the instant case in view of the legal principles heretofore announced by this court, and other courts, and which we think are applicable to the facts and binding as to the law of the case. While it may be said that some of the authorities of this state herein cited to sustain the position of respondent, strictly speaking, may be said to be *obiter*, nevertheless they are at least persuasive and find support in well-recognized principles of the law of contracts. In the cases of this state in which this court has had occasion to consider the question at all the conclusion arrived at by us has been favored either by express language or by implication. There is, however, direct authority to be found in the cited cases sustaining our conclusions.

[7] It is a fact that the administrator herein acted without having first submitted the question of the completion of the contracts to the judgment of the probate court. In some jurisdictions such a failure on his part would be regarded as a sufficient reason for the disallowance of an expenditure of the estate's funds. But this court has not gone to the extent that some jurisdictions have gone and made the procurement of the permission of the court absolutely essential to the allowance of an expenditure made by the administrator. In *In re Clos*, 110 Cal. 494 [42 Pac. 971], it was said: "It would have been better, perhaps, as it would in any case, had the executrix first procured the permission of the probate court to make the contemplated improvement before proceeding thereto; but this is not an indispensable condition to the allowance of the demand in her account, where it appears that the expenditures were just and reasonable, and have been made in the interests of the estate. (*Estate of Moore,* 88 Cal. 1 [25 Pac. 915].)" The probate court having examined into the matter before us, concluded that the administrator had acted reasonably in the premises and approved his action. We emphasize the recommendation made by the court and add that in all cases where there is room for doubt as to the duty of the administrator or as to the policy that should be pursued, the judgment of the probate court should be consulted before any steps are taken that might seriously affect the funds of the estate.

In view of our decision on the main question it becomes unnecessary to pass upon the other questions raised by ap-

pellant, for the reason that they are included within and are subsidiary to the main question decided.

The order appealed from is affirmed.

Richards, J., Waste, C. J., Shenk, J., Curtis, J., Lawlor, J., and Lennon, J., concurred.